DAL

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF | CASE NO. _____ |
| APPLE ICLOUD ACCOUNT ASSOCIATED WITH slw5683@icloud.com | 19 - 2 0 0 0 JMC |

### AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

I, Special Agent Brendan Plasha, being duly sworn, depose and state that:

### PURPOSE OF THE AFFIDAVIT

1.      This affidavit is made in support of an application for a search warrant under Federal

Rule of Criminal Procedure 41 and 18 U.S.C. §§ 2703(a), 2703(b)(1)(A), and 2703(c)(1)(A) to

require Apple, Inc. to disclose to the government records, files, documents, photographs, videos,

and other information in its possession, pertaining to the iCloud account associated with the e-mail

address slw5683@icloud.com and believed to have been used by or associated with Stewart

Williams that is stored at premises owned, maintained, controlled, or operated by Apple, Inc., a

business headquartered at 1 Infinite Loop Cupertino, CA 95014.  The information to be searched

and seized is described in the following paragraphs and in Attachments A and B.

The United States has probable cause to believe that the sought after records and other

information associated with the iCloud account will provide evidence of violations of 18 U.S.C.

§1951(a)) (Affecting Interstate Commerce by Robbery).

### JURISDICTION

2.      This Court has jurisdiction to issue the requested warrants because it is "a court of

competent jurisdiction" as defined in 18 U.S.C. § 2711. *See* 18 U.S.C.

§ 2703(c)(1)(A).  Specifically, the Court is "a district court of the United States (including a

magistrate judge of such court) . . . that ~~has jurisdiction over the offense~~ being investigated." 18

U.S.C. § 2711(3)(A)(i).

FILED _____ ENTERED
_____ LOGGED _____ RECEIVED

JUL 0 1 2019

AT BALTIMORE
CLERK, U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY_____ DEPUTY

## AGENT BACKGROUND

3.    I am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms, and Explosives

("ATF"), and have been since 2015. I am currently assigned to the ATF Baltimore Field Division,

Baltimore Field Office. I attended the United States Department of Homeland Security's Criminal

Investigator Training Program and ATF's Special Agent Basic Training, both located in Glynco,

Georgia, for a combined period of twenty-six weeks. I have received extensive training, both

formal and on-the-job, in the provisions of the Federal Firearms Laws and Federal Narcotics Laws

administered under Title 18, Title 21, and Title 26 of the United States Code. As an ATF agent, I

have conducted and participated in numerous investigations concerning violations of federal firearm

laws, violations of federal controlled substance laws, and the commission of violent crimes. I have

received specialized training regarding, and have personally participated in, various types of

investigative activities, including: (a) physical surveillance; (b) the debriefing of defendants,

witnesses, informants, and other individuals who have knowledge concerning violations of federal

firearms and controlled substance laws; (c) undercover operations; (d) the execution of search

warrants; (e) the consensual monitoring and recording of conversations; (f) electronic surveillance

through the use of pen registers and trap and trace devices; (g) the court-authorized interception of

both wire and electronic communications (i.e., Title III wiretaps); and (h) the handling,

maintenance, and examination of evidence, including wireless telephones and computers.

4.    As a Special Agent with the ATF, I am authorized to investigate violations of laws of

the United States and as a law enforcement officer with the authority to make arrests and execute

warrants issued under the authority of the United States.

5.    The information contained in this affidavit comes from my personal observations,

my training and experience, and information obtained from other agents, police officers and

detectives, witnesses, and reports. Since this affidavit is being submitted for the limited purpose of

2

establishing probable cause for securing the search warrant, I have not included every fact known to me concerning the investigation. Rather, I have set forth only those facts that I believe are necessary to establish probable cause to believe that evidence, fruits, and instrumentalities of the violation of 18 U.S.C. § 1951(a) (Robbery Affecting Commerce) will be found in the sought after records and other information associated with the Apple account.

## BACKGROUND ON ICLOUD

6.      I know that Apple is an American multinational corporation that designs, develops, and sells consumer electronics, computer software and personal computers.

7.      I also know that Apple offers services called "iCloud" and "iMessage" to its users.

8.      iCloud is a service provided by Apple that allows its users to store files on Apple's servers in order to sync their files across all of their Apple devices, including iPhones such as the iPhone SE Rose Gold device associated with Stewart Williams and linked to the iCloud account that is the subject of this search warrant. According to iCloud's terms and conditions, at http://www.apple.com/legal/internet-services/icloud/en/terms.html, iCloud collects and stores "your last three backups." "Backup is limited to device settings, device characteristics, photos and videos, documents, messages (iMessage, SMS, and MMS), ringtones, app data (including Health app data), location settings (such as location-based reminders that you have set up), and Home screen and app organization."

9.      Additionally, for device-based location information, iCloud "must collect, use, transmit, process and maintain your location data, including but not limited to the geographic location of your device and information related to your iCloud account ("Account") and any devices registered thereunder, including but not limited to your Apple ID, device ID and name, and device type." Anyone using an iPhone, must set up an Apple ID, using a valid electronic mail address. An

3

iPhone typically has a cellular telephone number associated with it, as well as cellular telephone service provided by a third-party cellular company.

10. Messaging, the transmission of information from one electronic device to another, comes in many variations. I know based on training and experience that individuals involved in collective criminal activity use Apple devices to send messages to each other, including iMessages, which are discussed in further detail below.

11. Traditional text messaging, formally known as the Short Message Service ("SMS"), is text-only service provided by a mobile telephone service provider. This service is normally provided over the cellular network, from one device to another, based on mobile telephone number. SMS has been augmented with the Multimedia Messaging Service ("MMS") which expands the capabilities with group messaging and expanded message formats. Group messaging allows individuals to communicate with multiple people simultaneously, while expanded message formats allow users to transmit pictures, videos and/or audio recordings. Further, based on the typically larger sizes of these messages, MMS is normally delivered over a user's mobile data connection rather than the mobile telephone, or circuit, connection. Mobile telephone service providers typically maintain transactional records regarding SMS and MMS communications, including the sender, recipient, and date/time of the message.

12. Apple has further evolved messaging with iMessage. Using the Messages application on any Apple device that uses Apple iOS or Mac OS X, a user can send an iMessage to any other iOS or Mac OS X device. Further, iMessages sent from one Apple device can appear on all other Apple devices that are associated with the same Apple ID, and have activated the Messages application on that device. An iMessage is sent and received based on an Apple ID, but can also be sent based on the user's telephone number, if a telephone number is associated with that device. If

an iMessage is sent, the message uses an Internet data connection, whether that connection is provided by the mobile telephone service provider or a Wi-Fi hotspot. Apple encrypts iMessages. I am aware that iMessages is the default messaging application for iPhones, unless the user affirmatively disables the iMessages application.

13.     If a data connection is not available to the Apple device, or the Apple device is sending a message to a non-Apple device, the Messages application will default to traditional SMS if possible for delivery of the message. Further, iOS allows a user of Apple devices to disable iMessage on one or more of a user's Apple devices, so that the user will not receive iMessages on a given device. Transactional records pertaining to iMessages sent and received are not captured through the mobile telephone service provider. However, Apple does capture transactional records regarding iMessages.

14.     Based on my training and experience, I have learned that iPhones often have associated "Cloud" (Backup) accounts on which there is data and information stored by the user of the iPhone. Moreover, based on my training and experience, I know that instant messages, emails, voicemails, photos, and videos—all of which may be saved on a user's iCloud account—are often created and used in furtherance of collective criminal activities, including firearm and drug trafficking offenses.

## PROBABLE CAUSE

15.     Between May 25, 2018 and September 1, 2018, there were a total of 18 robberies that occurred in Baltimore City, Baltimore County, and Anne Arundel County that share common characteristics and are linked together by various pieces of evidence. The robberies occurred in geographic and temporal clusters. Additionally, groupings of these robberies appear to have involved similar looking weapons and clothing. There is also forensic evidence, in the form of

5

fingerprints, that link Stewart Williams and Kelvin McFadden to several robberies. Finally, there is surveillance footage of many of these robberies.

16.    The below chart lists the entire series of robberies.

| | Date | Business Name | Location |
|---|---|---|---|
| 1 | 5/25/2018  9:33pm | Conrad's Crabs and Seafood Market | 1720 E. Joppa Rd, Parkville, MD 21234 |
| 2 | 6/10/2018  8:23pm | Pappas Liquor Store | 1725 Taylor Ave, Parkville, MD 21234 |
| 3 | 6/20/2018  9:04pm | Smoothie King | 1830 York Rd, Lutherville-Timonium, MD 21093 |
| 4 | 6/20/2018  9:17pm | Padonia Liquors | 51 E. Padonia Rd, Lutherville-Timonium, MD 21093 |
| 5 | 6/20/2018  10:10pm | Liquor Mart | 833 Taylor Ave, Towson, MD 21286 |
| 6 | 7/10/2018  11:00pm | Group of Individual Victims | 1700 Yakona Rd, Baltimore City, MD 21234 |
| 7 | 7/11/2018  9:55pm | Individual Victim | 8625 Walther Blvd, Baltimore City, MD 21236 |
| 8 | 7/11/2018  9:57pm | Walther Liquors | 8625 Walther Blvd, Baltimore City, MD 21236 |
| 9 | 7/18/2018  11:07pm | Harford Beverage | 7732 Harford Rd, Parkville, MD 21234 |
| 10 | 7/20/2018  6:14pm | C-Mart | 8039 Fort Smallwood, Riviera Beach, MD 21226 |
| 11 | 7/22/2018  1:31am | Wawa (attempted) | 8300 Veterans Highway, Millersville, MD 21108 |
| 12 | 7/26/2018  5:50pm | 8 Days A Week Convenience Mart | 1700 Taylor Ave, Parkville, MD 21234 |
| 13 | 8/5/2018  9:25pm | John's Liquor and General Store | 812 Duvall Hwy, Pasadena, MD 21122 |
| 14 | 8/18/2018  9:50pm | Quick Stop Food Mart | 3301 E Joppa Rd, Parkville, MD 21234 |
| 15 | 8/21/2018  9:50pm | GameStop | 3611 Washington Blvd, Halethorpe, MD 21227 |
| 16 | 8/25/2018  10:54pm | GameStop | 6901 Security Blvd, Baltimore City, MD 21207 |

| 17 | 8/28/2018 10:50pm | GameStop | 1004 Taylor Ave, Towson, MD 21286 |
| 18 | 9/01/2018 10:35pm | GameStop | 6370 York Rd, Baltimore, MD 21212 |

17.     On June 22, 2018, Michael Arnold was arrested in Anne Arundel County while attempting to rob a Wawa (07/22/2018).

18.     After Arnold's arrest, based on Arnold's physical appearance and other evidence, investigators identified multiple robberies of convenience and liquor stores that they believed Arnold and other co-conspirators were responsible for or involved with.

19.     Arnold has been charged in Anne Arundel County with the C-Mart robbery (7/20/2018) and the Wawa attempted robbery (7/22/2018). Your affiant understands that Arnold has reached a plea agreement with the state prosecutor for those crimes.

20.     After being originally charged by the State of Maryland, on May 30, 2019, a Federal Grand Jury indicted Stewart Williams and Kelvin McFadden with three counts of violating 18 U.S.C. § 1951(a), two substantive counts and a conspiracy count. (JKB-19-0271).

21.     On September 1, 2018, Stewart Williams and Kelvin McFadden were arrested in Baltimore City after leading police on a high speed chase following the robbery of a GameStop. That robbery involved the taking of U.S. currency and video game systems. Police were able to track the location of the car using a "cash tracker" that was taken by the robbers amongst cash stolen during the GameStop robbery. Police obtained a search warrant for the car, which they also learned was registered to McFadden. During that search, police recovered numerous pieces of evidence, including the cash tracker, a black BB/replica gun matching the gun used by robbers during the four GameStop robberies, numerous game systems, two hats that matched hats worn by the robbers who had just commited the 9/1/2018 GameStop robbery, and two cell phones. One of the matching hats recovered from the car was a blue hat with a white star. The other hat was a San

7

Antonio Spurs hat. Images of both are below.





22.     After the arrest of Williams and McFadden, investigators executed a search warrant

for the location to which the pair had fled, an apartment located on 922 N. Stricker Street in

Baltimore. Among other items, investigators recovered a burgundy or maroon shirt that was found

in a trashcan within the apartment. That shirt matched one worn by one of the robbers during the

9/1/2018 GameStop robbery. A photograph is included below.



23.     After the arrest of Williams and McFadden, based on their physical appearance and other evidence, investigators identified multiple robberies of stores, convenience stores and liquor stores that they believe Williams and McFadden and certain co-conspirators were responsible for or involved with.

24.     For example, investigators reviewed surveillance footage of the robberies of all four GameStops, each of which involved two black males entering and robbing the stores. The appearance of those two robbers was consistent with Stewart Williams and Kelvin McFadden for each GameStop robbery. Still images from surveillance footage captured the robbers as they left the GameStop stores after completing the robberies. Still images of the robbers from the 8/28/2018 and 9/1/2018 GameStop robberies captured photos of the two different robbers wearing what appears to be the same hat during the two different robberies, a blue hat with a white star. A still image from the 9/1/2018 robbery shows one of the robbers, who is wearing a blue hat with a white star, wearing a shirt that matches the one recovered ripped up inside a trash can at 922 N. Stricker Street. Additionally, the San Antonio Spurs hat that was recovered also matches one worn by the two different robbers on different days of GameStop robberies. Some example images are below.

9



**GameStop 8/21/2018 Washington Boulevard, Halethorpe, MD 21227**



**GameStop 8/28/2018 1004 Taylor Avenue, Towson, MD 21286**



**GameStop 9/1/2018 6370 York Road, Baltimore MD**



**GameStop 9/1/2018 6370 York Road, Baltimore MD**

25.    Additionally, relying on the serial number located on a receipt from a pawn store,

investigators were able to determine that one of the game consoles stolen from the 08/28/2018

GameStop robbery was sold to a pawn shop by Kaela McFadden, Kelvin McFadden's sister.

26.     Based on records recovered from Sony, investigators were able to determine that the

same game console pawned by Kaela McFadden was linked with a Sony Account associated with

the online ID "KeezDaCapo." The KeezDaCapo account was created on 8/28/2018 and includes

the listed name of Kelvin McFadden and the listed phone number of 443-890-7949. Subscriber

information records from TracFone for the phone number 443-890-7949 list Kelvin McFadden as

the subscriber.

27.     Investigators recovered a phone from Arnold's person after he was arrested for the

attempted robbery of the Wawa on 7/22/2018. As mentioned above, two phones were recovered

during a search warrant execution of McFadden's car after Williams and McFadden were arrested

for the robbery of the GameStop on 9/1/2018.[1]

28.     Investigators confirmed that the phone recovered from Arnold, was in fact used by

Arnold and belonged to him and was associated with 410-585-7592 by executing a search warrant

on the phone.[2]

29.     On February 12, 2019, The Honorable J. Mark Coulson, United States Magistrate

---

[1] Investigators obtained a state search warrant the search of the 2003 Honda Accord that was registered to McFadden and was involved in the high-speed chase following the final Gamestop robbery (9/1/2018). That search warrant also authorized state investigators to search for "Any and all cell phones" within the car and permitted them to undertake the "search and recovery, (download), of all data from within". For the purposes of this affidavit, federal investigators are not relying on any information or evidence obtained from the state download of the phones associated with Stewart Williams or Kelvin McFadden. I previously sought, and received, a federal search warrant for all three phones associated, respectively, with Stewart Williams, Kelvin McFadden, and Michael Arnold. 19-0559-JMC.

[2] State investigators obtained a warrant to search Arnold's phone and seize relevant evidence, fruits, and instrumentalities related to the robberies. While the state search of that phone yielded information that is helpful to this investigation, I also sought and received a federal search warrant for the phone. 19-0559-JMC.

Judge for the District of Maryland, signed a warrant authorizing the search of the three cell phones associated with Stewart Williams, Kelvin McFadden, and Michael Arnold, respectively, among other searches. *See* Misc. No. 19-0559-JMC.

30.     As part of the investigation, investigators received subscriber information records from Apple related to the iCloud account, associated with the e-mail address slw5683@icloud.com . Those records confirm that the name of the person associated with that account is Stewart Williams and list the street address of 609 Willow Avenue. Public records reflect that Stewart William's middle name is "Lee", that he was born on 5/6/1983, and that he lists a street address of 609 Willow Avenue in Baltimore, Maryland. Thus, Stewart Williams's initials and birthdate correspond with the "slw5683@icloud.com" e-mail address. Further, the subscriber information records from Apple for the iCloud account lists an iPhone device as being registered with Apple and linked to the iCloud account. Per the subscriber records, the IMEI for that "IPHONE SE ROSE GOLD 32-GB-USA" is 356603081879190. That IMEI number matches the IMEI number that was located on the phone associated with Stewart Williams that federal investigators obtained a warrant to search. No. 19-0559-JMC at Attachment C.

**Defendant Information**

Defendant

Name: **WILLIAMS, STEWART**
Race:     **Black**  Sex: **Male**  Height: **6'0"**  Weight: **205**
HairColor: **Black**  EyeColor: **Brown**
DOB:      **05/06/1983**
Address: **609 WILLOW AVE.**
City:      **BALTIMORE**  State: **MD**  Zip Code: **21212-0000**

31.     After a search of the phone associated with Kelvin McFadden, I discovered pictures on the device of Kelvin McFadden, further leading me to believe that the device did in fact belong

13

to Kelvin McFadden. Furthermore, the phone's extraction report lists 443-890-7949 as associated with the SIM card within the telephone.

32. A further search of this phone recovered the following picture of Kelvin McFadden, in a blue hat with a white star, associated with the "1life_2finesse" Instagram account.



33. After being charged with the four GameStop robberies on 9/1/2018, Williams's fingerprints were also found at the scene of the Walther Liquors robbery that occurred on 7/11/2018.

34. McFadden's fingerprints were found both at the scene of the GameStop robbery that occurred on 9/1/2018 and also at the scene of the Quick Stop robbery that occurred on 8/18/2018.

35. One video recovered from the files of Arnold's cell phone, after the execution of the state search warrant, depicts Arnold riding in the passenger's seat of a car while it is driving on a highway. Music is playing in the background, and at times during the video, you can see another person driving the car. I recognize the driver to be Stewart Williams. Williams is wearing a black

14

and white "Houston Rockets" hat that matches one worn during several robberies (7/18/2018,

7/20/2018, 7/22/2018, and 7/26/2018). The video file is saved as "0718182035-01.3gp".

## CONCLUSION

36.     Based on the above, I respectfully submit that there is probable cause to believe that

Williams, McFadden, and Arnold have violated Title 18 U.S.C. § 1951(a) (Affecting Interstate

Commerce by Robbery), and that there is probable cause to believe that evidence of these crimes,

including potential photographs, communications, or information that links Kelvin McFadden,

Stewart Williams, and/or Michael Arnold together or with other co-conspirators will be recovered

from the information and records sought from the Apple iCloud account associated with

slw563@icloud.com.

37.     I respectfully request that the Court issue the proposed search warrant, pursuant to 18

U.S.C. § 2703(c) and Federal Rule of Criminal Procedure 41.

38.     I respectfully request that the Court issue a search warrant to search the account

listed in Attachment A and seize evidence, records, and items described in Attachment B.

39.     Because the warrant will be served on Apple who will then compile the Information

at a time convenient to them and because the warrant does not involve entry on to physical

premises, reasonable cause exists to permit the execution of the requested warrants at any time in

the day or night.

40.     Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not

required for the service or execution of this warrant.

19-2000 JMC                                          DAL

Special Agent Brendan Plasha
Bureau of Alcohol, Tobacco, Firearms, and
Explosives

Subscribed to and sworn before me this ___7___ day of ___June___, 2019

THE HONORABLE J. MARK COULSON
UNITED STATES MAGISTRATE JUDGE

ENTERED
FILED_____ RECEIVED
LOGGED_____

JUL 01 2019

AT BALTIMORE
CLERK, U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY                                      DEPUTY

16

## 19-2000 JMC

## ATTACHMENT A TO SEARCH WARRANT

### Apple, Inc.

### Property to Be Searched

This warrant applies to information associated with the following Apple iCloud account:

- The Apple iCloud account associated with the email address

**slw5683@icloud.com**

The requested Apple iCloud information and records are stored at premises owned, maintained, controlled, or operated by Apple, Inc., a business headquartered at 1 Infinite Loop Cupertino, CA 95014.

ENTERED
FILED_____RECEIVED
LOGGED_____

JUL 01 2019

AT BALTIMORE
CLERK, U.S. DISTRICT COURT
DISTRICT OF MARYLAND    DEPUTY

BY

## ATTACHMENT B TO SEARCH WARRANT

### Apple, Inc.
### Particular Things to be Seized

**I. Files and Accounts to be produced by Apple Inc. from January 1, 2018, to the present.**

To the extent that the information described in Attachment A is within the possession, custody, or control of Apple (the "Target ISP"), the Target ISP is required to disclose the following information to the government for the accounts or identifiers listed in Attachment A (the "Target Account"). Such information should include the below-described content of the subject account:

a.     All iCloud data existing on Apple's servers, including subscriber information, mail logs, and all iCloud content, including, but not limited to, email, photo stream, photo library, documents, contacts, calendars, bookmarks, and Safari browsing history;

b.     All iOS device activation information and device backups, including photos and videos in the Camera Roll, device settings, app data, iMessage, SMS, and MMS messages and voicemail;

c.     All FaceTime records, including call invitation logs;

d.     All iMessage records, including capability query logs;

e.     All Find My iPhone records and transactional activity, including records of all attempts to locate, lock, or wipe the device;

f.     All My Apple ID, iForgot, and Game Center connection logs and transactional records;

g. All device registration or customer information associated with the account, including name, address, email address, and telephone number;

h. All customer service records, including support interactions, warranty and repair information;

i. All iTunes data, including basic subscriber information, purchase information, and iTunes Match data;

j. All Apple retail store, online store, and gift card information associated with the account;

k. Subscriber Information, including the name and location, supplied by the user at the time of registration, the date the account was created and all of the services of the Target ISP used by the Target Account;

l. Records of user activity for each connection made to or from the Target Account, including log files; messaging logs; the date, time, length, and method of connections; data transfer volume; user names; and source and destination Internet Protocol addresses, and any telephone, instrument or other unique identifiers collected by the Target ISP and associated with the Target Account;

m. All telephone or instrument numbers associated with the Target Account (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"), Mobile Identification Numbers ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network

Number ("MSISDN"), International Mobile Subscriber Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI")).

## II.    Information to be Seized by Law Enforcement Personnel

All information described above in Section I including correspondence, records, documents, photographs, videos, electronic mail, chat logs, and electronic messages that constitutes fruits, evidence and instrumentalities of violations of 18 U.S.C. §1951(a)) (Affecting Interstate Commerce by Robbery) for the Target Account listed on Attachment A and

a.    Records, documents, programs, applications, photographs, video or audio recordings, call history information, text messages and other cellular phone communications, social media postings, stored phones numbers or address book contacts, voice mail messages or voice mails stored in any form, and other digital evidence, that refer or relate to:

i.    Firearms or items that appear to be firearms and weapons or items that appear to be weapons;

ii.    STEWART WILLIAMS and all associates of STEWART WILLIAMS;

iii.    Evidence of clothing worn during the commission of the offenses;

iv.    Photographs of any items or object used during the commission of the offenses, including vehicles, bags, etc.;

v.    Evidence or photographs related to stolen items, including U.S. currency and game systems;

vi.    Finances, bank accounts, financial records, or records of financial transactions;

vi.    Messages between STEWART WILLIAMS and any associates.

b.    All phone books that contain and identify contacts of STEWART WILLIAMS;

c.     Records, documents, programs, applications or materials, or evidence of the absence of same, sufficient to show the actual user(s), owner or possessor of the Target Account.

d.     All location data, including any GPS coordinates or any applications that would store such information.

e.     Evidence of who used, owned, or controlled the Target Account listed on Attachment A.

g.     Evidence of the times the Target Account listed on Attachment A was used.

h.     Passwords and encryption keys, and other access information that may be necessary to access the Target Account listed on Attachment A and other associated accounts.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage and any photographic form.

## III.    The government's search

With respect to the search of the information provided pursuant to this warrant by the above-referenced provider, law enforcement personnel will make reasonable efforts to use methods and procedures that will locate and expose those categories of files, documents, communications, or other electronically-stored information that are identified with particularity in the warrant while minimizing the review of information not within the list of items to be seized as set forth herein, to the extent reasonably practicable.

ENTERED
FILED _____ RECEIVED
LOGGED _____

JUL 0 1 2019

AT BALTIMORE
CLERK, U.S. DISTRICT COURT
DISTRICT OF MARYLAND     DEPUTY

BY

## CERTIFICATE OF AUTHENTICITY OF DOMESTIC BUSINESS
## RECORDS PURSUANT TO FEDERAL RULE OF EVIDENCE 902(11)

I, _____, attest, under penalties of perjury under the

laws of the United States of America pursuant to 28 U.S.C. § 1746, that the information contained

in this declaration is true and correct. I am employed by Apple, Inc. (hereinafter "Apple"), and

my official title is _____. I am a custodian of records for Apple. I

state that each of the records attached hereto is the original record or a true duplicate of the original

record in the custody of Apple, and that I am the custodian of the attached records consisting of

_____ (pages/CDs/kilobytes). I further state that:

a.      all records attached to this certificate were made at or near the time of the occurrence of

the matter set forth, by, or from information transmitted by, a person with knowledge of those

matters;

b.      such records were kept in the ordinary course of a regularly conducted business activity of

Apple; and

c.      such records were made by Apple as a regular practice.

I further state that this certification is intended to satisfy Rule 902(11) of the Federal Rules

of Evidence.

| | |
|---|---|
| _____ | _____ |
| Date | Signature |